# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYA THRUN,<br><br>                  Plaintiff,<br>  vs.<br>UNITED HEALTHCARE INSURANCE COMPANY,<br><br>                  Defendant. | CASE NO. 12cv799-LAB (WVG)<br><br>**ORDER OF DISMISSAL** |

On April 3, 2012, Plaintiff Tanya Thrun, who is proceeding *pro se*, filed her complaint. Defendant United Healthcare Insurance Company filed a motion to dismiss (Docket no. 4). United Healthcare also filed a notice of related cases pointing out the complaints in this case and several others were virtually identical and appeared to be orchestrated by a third party clinic rather than the named Plaintiffs.

Thrun then filed an amended complaint. On May 29, United Healthcare moved to dismiss that complaint (Docket no. 6). Judge Marilyn Huff, who was assigned to the case at that time, issued an order that same day denying as moot the first motion to dismiss. Judge Huff's order specifically identified the first motion (Docket no. 4) as the one that was being denied as moot, and explained that the reason for denial was that Thrun had filed an amended complaint.

Because this case and the other cases identified as similar were deemed related, this action was transferred from U.S. District Judge Marilyn Huff to U.S. District Judge Larry

Burns. The hearing on United Healthcare's motion to dismiss was transferred to Judge Burns' calendar (Docket no. 11 and docket entry following). That hearing was set for July 2.

When Thrun failed to file an opposition within the time permitted, the Court on June 26 issued an order (Docket no. 12) dismissing the amended complaint without prejudice, but ordering Thrun, if she still wanted to pursue her claims, to explain why she hadn't filed her opposition, and to show that she could successfully amend. That order cautioned Thrun that if she didn't file her motion for leave to amend by July 5, 2012, this action would be dismissed with prejudice.

On July 12, Thrun submitted a late *ex parte* application for leave to file a second amended complaint. The application offered the explanation that Thrun mistakenly thought Judge Huff's order had denied as moot the second motion to dismiss. It said she thought she was supposed to prepare for an early neutral evaluation (ENE) to be held on July 2, not a motion hearing. It also offered the explanation that she didn't receive the Court's June 26 order in the mail until July 6.[1] The proposed second amended complaint (SAC) is attached as an exhibit.

The application doesn't show good cause. First, the mistakes Thrun points to are unreasonable. Judge Huff's order refers to the motion to dismiss by both filing date and docket number. Furthermore, no ENE was ever scheduled or even mentioned in this case, so there is no explanation for Thrun's belief that she was supposed to file a letter brief or appear for an ENE on July 2. The only docket entries concerning any event on July 2 all concern a hearing on the motion to dismiss, which was originally set before Judge Huff but then reset before Judge Burns. (Docket entries between Dcoket no. 10 and 11; *see also* Docket entry between Docket nos. 11 and 12, confirming that hearing on motion to dismiss was set before Judge Burns.)

Thrun's explanation about the ENE also contradicts her explanation that until July 6 she didn't know what was taking place in this case. The application represents that Thrun

---

[1] According to Thrun's explanation, the letter took ten calendar days to arrive, even though the sending and receiving addresses were both in the city of San Diego.

filed with the Court a letter brief in advance of the ENE she thought was taking place on July 2. The brief is attached as an exhibit, and is erroneously addressed to Judge Burns instead of Magistrate Judge William Gallo (who would be the judicial officer conducting the ENE, if an ENE had been scheduled), at the wrong address. The letter brief, however, expresses Thrun's understanding that she will be present at the ENE ("This letter will confirm that the directors [of Ambulatory Care Surgery Center] and myself will be in attendance on July 2, 2012, as ordered by the court.")  However, Thrun never appeared for an ENE on July 2, either before Judge Burns or Judge Gallo, and of course no ENE was held. Had she appeared, she would have been told that there was no ENE scheduled. This was more than enough to put her on notice that she should check the docket.  And more significantly, the fact that she didn't appear for the ENE at all suggests that at some point before that she knew there wouldn't be one.

Finally, although Thrun has submitted three different complaints for filing, and has had the benefit of two motions pointing out the deficiencies, she has filed essentially the same deficient complaint each time. She brings two state claims pertaining to representations her benefit plan allegedly made about medical coverage. There is a substantial question whether these are preempted by ERISA. *See The Meadows v. Employers Health Ins.*, 47 F.3d 1006 (9th Cir. 1995).

As for the ERISA claim itself, the claim is far too conclusory. It essentially says, without quoting or even summarizing  plan terms, a summary plan description, or any other plan-related documents, that Thrun was led to believe the medical procedure she underwent was covered. It alleges ACSC was told the procedure "would be covered at 70% of the reasonable and customary charges," subject to certain caps and deductions (SAC, ¶ 13), the plan didn't specify the dollar amount or contract rate that would be paid to the provider for the procedure (*id.*, ¶ 11), and the charges were "covered under the Plan." (*Id*. ¶ 17.) Allegations about what the plan did or didn't cover are merely conclusory. Furthermore, whether a procedure is "covered" isn't the final word on how much the provider will be paid. *See Sanchez v. TakeCare Ins. Co., Inc*. 2010 WL 5148074, slip op. at *12 (D.Guam, Dec.

13, 2010) (where plaintiff was told her children were "fully covered" under a health care plan, the words "fully covered" weren't properly construed to mean unlimited coverage, or coverage that would enlarge plaintiff's rights beyond what the plan provided for). The negative allegation about what the plan didn't say or didn't include isn't helpful to Thrun, because it only rules out one of many ways a plan document could limit payment. *See Krauss v. Oxford Health Plans, Inc.*, 418 F. Supp. 2d 416, 428–29 (S.D.N.Y. 2005) (discussing, with approval, how health plan calculated reasonable payments, even though the plan document didn't disclose how "usual customary and reasonable" payment caps were calculated). *See also id.* at 430 (concluding that general reference to Health Insurance of Association of America data as the basis for defendant's calculation of payment caps was sufficient). Even accepting all the SAC's allegations as true, the SAC still fails to allege that the plan required the payment Thrun is now seeking, or that misrepresentation to her about the plan's terms occurred.

The only specific factual allegations about coverage pertain to conversations between plan administrators and the Ambulatory Care Surgical Center, which is not a party to this case. None of the allegations reasonably show the plan required full payment of the amount Thrun now argues United Healthcare should have paid. The most the SAC shows is that Thrun thought her procedure would be paid for, or someone represented that it was would be, neither of which is sufficient. *See Sanchez,* 2010 WL 5148074 at *12 ("[I]f the written terms of an ERISA plan do not entitle the claimant to the coverage sought, benefits will not be forthcoming on the basis of oral representations to the contrary.")

Under 29 U.S.C. § 1332(a)(1)(B), Thrun may bring an action in this Court to recover benefits due her under the terms of the plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan. In other words, the terms of the plan govern, not her belief about them or representations anyone made about them. But in no version of the complaint are the relevant terms of the plan ever discussed. Rather, Thrun's claims appear to rest on incomplete communications between third parties. In the original complaint, Thrun didn't even know what the plan terms were, (Compl., ¶¶ 11,

13, 20), or whether she had undertaken an administrative appeal as required under ERISA. (*Id.*, ¶ 14.)

The SAC also doesn't adequately allege who the plan adminstrator was,[2] or whether the plan document gave the administrator dirscretion to determine eligibility for benefits or to construe the plan's terms. *See Fireston Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (discussing standard of review of ERISA plan administrator's decision). Furthermore, as United Healthcare has pointed out, it appears Thrun never administratively exhausted her claim, as required. *See Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008). Both the FAC and SAC allege only that ACSC filed an appeal on Thrun's behalf, and United Healthcare denied it as untimely. (FAC, Ex. C.)[3] *See Chorosevic v. MetLife Choices*, 600 F.3d 934, 945 (8th Cir. 2010) (ERISA plan administrator was not required to entertain untimely appeal).

Finally, although this issue wasn't briefed, the SAC attempts to recover the full $7,483.50 of unpaid charges, even though the SAC and attached documents show United Healthcare was only responsible for paying (at most) 70% minus a $300 deductible or copay, and subject to a $3000 stop loss limit. (SAC, ¶ 13.) In no event could Thrun recover her $300 copay or require United Healthcare to pay more than 70% of the amount ACSC charged. This means United Healthcare, at most, would be required to pay $7018.50. Discounting this

---

[2] The FAC alleges that the plan itself was the plan administrator (FAC., ¶ 4), which cannot be true. United Healthcare's motion to dismiss points this out, but the SAC repeats the defective allegation. (SAC ¶ 4.)

[3] Although the SAC doesn't allege facts about the timeliness of the appeal, it does attach a an explanation of benefits that was attached to a check. (SAC, Ex. B.) The EOB is dated November 10, 2008, and ACSC's letter to United Healthcare is dated January 7, 2009. This doesn't show the appeal is timely, for several reasons. First, in spite of the SAC's allegations that United Healthcare sent Thrun the EOB and check, in fact the check and EOB were addressed to ACSC. The SAC never alleges when Thrun's claim was last processed or denied. There is also no showing when ACSC's letter was received, or if it was the only letter sent. In fact, it appears that at least one intervening communication was sent; a hand annotation on the letter indicates a "tracer" was sent September 24, 2011. It is unclear which letter — the original, the "tracer," or some other letter — was the one later accepted as an appeal. *See Goewert v. Hartford Life & Acc. Ins. Co.*, 442 F. Supp. 2d 724, 729 (E.D. Mo. 2006) (letter sent by physician on behalf of beneficiary was not deemed an appeal, but follow-up letter by beneficiary's attorney was). Although it would probably have been timely received if mailed when it was dated, the appeal denial (dated October 27, 2011) says it wasn't timely received, and there is no explanation why this is wrong.

by the amount it already paid, Thrun's recovery could not exceed $4047.00, rather than the $7,483.50 she seeks. And, depending on what the allegation about "stop loss" means, it's possible Thrun's recovery would be limited to $28.50 ($3000 limit minus the $2,971.50 already paid) even if she were to prevail.

Here, Thrun twice refiled essentially the same complaint, each time evading United Healthcare's motions to dismiss, and never responding to the defects pointed out in the motions. The proposed SAC doesn't state a claim under ERISA, and its state law claims appear to be preempted. Although Thrun was told she needed to show that she could successfully amend, she hasn't done so, and it doesn't appear likely she can do so. Her explanations for missing deadlines are not completely plausible, and in any event they don't show good cause.

Thrun's *ex parte* application, with the proposed SAC and ENE letter brief attached as exhibits, are being rejected by discrepancy order for filing, but the Court will retain a copy for chambers files.

It is worth mentioning that even if the Court were to accept the SAC for filing, it would immediately be dismissed as inadequate for the reasons just discussed, and Thrun would have to file a third amended complaint. Although ordinarily the adjudications on the merits are preferred, here there is no reason to believe Thrun could successfully amend even if the Court gave her the two additional opportunities she would need.

This action is therefore **DISMISSED WITH PREJUDICE**, for reasons discussed in this order and the Court's order of June 26.

**IT IS SO ORDERED**.

DATED: July 19, 2012

_Larry A. Burns_

**HONORABLE LARRY ALAN BURNS**
United States District Judge